## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## CLEVELAND, OHIO

| | |
|---|---|
| **JESSICA TAYLOR**, individually and on behalf of all others similarly situated, | |
| | **CASE NO:** |
| PLAINTIFFS, | **JUDGE:** |
| vs. | **CLASS ACTION COMPLAINT** |
| **JOHNSON & JOHNSON** | |
| -and- | |
| **JANSSEN PHARMACEUTICALS, INC.** | **JURY DEMAND ENDORSED HEREON** |
| -and- | |
| **JOHNSON & JOHNSON CONSUMER, INC.** | |
| -and- | |
| **MCNEIL-PPC, INC.** | |
| -and- | |
| **MCNEIL CONSUMER HEALTHCARE** | |
| DEFENDANTS. | |

Now comes Plaintiff **JESSICA TAYLOR**, individually and on behalf of all others similarly situated, and for their complaint against Defendants **JOHNSON & JOHNSON, JANSSEN PHARMACEUTICALS, INC., JOHNSON & JOHNSON CONSUMER, INC., MCNEIL-PPC, INC.,** and **MCNEIL CONSUMER HEALTHCARE**, states as follows:

1

## I. INTRODUCTION

1. This case is based on false advertising and Defendants' explicit and implicit misrepresentations to consumers.

2. "Infants' Tylenol" is a highly overpriced pharmacological creation that has no unique properties or independent value in the now-standardized liquid pediatric acetaminophen marketplace. Infants' Tylenol survives and thrives because it misleads and deceives a particularly vulnerable class of consumers –parents of an infant – into believing that this pain reliever is designed specifically for, or is more beneficial to, infants.

3. Medication manufacturers and distributors may not arbitrarily mark up the cost of medicine.

4. Medication manufacturers and distributors may not mislead consumers into thinking that a medication is designed or intended for an infant when it is not.

5. Infants' Tylenol contains the exact same medicine as Children's Tylenol at a price premium approaching or exceeding 400%.

## II. PARTIES

6. Plaintiff is a resident of Geauga County, OH and a mother of small children, including a two-year-old.

7. Defendant Johnson & Johnson is a corporation with its principal offices located at One Johnson & Johnson Plaza, New Brunswick, New Jersey, and is in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceuticals and other products including Infants' Tylenol and Children's Tylenol by and through divisions and/or subsidiaries which it controls or directs. Johnson & Johnson distributes its products throughout the United States and the State of Ohio,

including Geauga County. Defendant Johnson & Johnson may be served with process by and through its registered agent at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

8. Defendant Janssen Pharmaceuticals, Inc. is a corporation with its principal offices located at One Johnson & Johnson Plaza, New Brunswick, New Jersey, and is in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceuticals and other products including Infants' Tylenol and Children's Tylenol by and through divisions and/or subsidiaries which it controls or directs. Janssen Pharmaceuticals, Inc. distributes its products throughout the United States and the State of Ohio, including Geauga County. Defendant Janssen Pharmaceuticals, Inc. may be served with process by and through its registered agent at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

9. Defendant Johnson & Johnson Consumer, Inc. is a corporation with its principal offices located at One Johnson & Johnson Plaza, New Brunswick, New Jersey, and is in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceuticals and other products including Infants' Tylenol and Children's Tylenol by and through divisions and/or subsidiaries which it controls or directs. Defendant Johnson & Johnson Consumer, Inc. distributes its products throughout the United States and the State of Ohio, including Geauga County. Defendant Johnson & Johnson Consumer, Inc. may be served with process by and through its registered agent at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

10. Defendant McNeil-PPC, Inc. is a subsidiary of Johnson & Johnson with its principal place of business at 7050 Camp Hill Road, Fort Washington, Pennsylvania, and is in the business

of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceuticals and other products including Infants' Tylenol and Children's Tylenol throughout the United States and the State of Ohio, including Geauga County. Defendant McNeil-PPC, Inc. may be served with process by and through its registered agent at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

11. Defendant McNeil Consumer Healthcare, is a division of McNeil-PPC and Johnson & Johnson, has its principal place of business at 7050 Camp Hill Road, Fort Washington, Pennsylvania, and is in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceuticals and other products including Infants' Tylenol and Children's Tylenol throughout the United States and the State of Ohio, including Geauga County. Defendant McNeil Consumer Healthcare may be served with process by and through its registered agent at One Johnson & Johnson Plaza, New Brunswick, New Jersey 08933.

### III.    FACTS

**The liquid pediatric acetaminophen (LPA) market previously contained different concentrations.**

12. The Tylenol brand is one of the most well-known and trusted brands in the over the counter (OTC) pain medication industry.

13. Tylenol is the largest producer of liquid pediatric acetaminophen ("LPA") in the U.S. and achieves its enormous market share through longstanding brand recognition and consumer trust.

14. Defendants previously marketed, produced, and sold LPA products containing different concentrations. A lower-volume, higher-LPA concentration product for infants and a lower-concentrated product for children.

4

15. Defendants marketed, produced, and sold as "Infants' Tylenol," LPA "drops" with concentrations of 80mg/.8mL or 80mg/1mL.

16. At the same time Defendants were selling LPA "drops," Defendants marketed, produced, and sold as "Children's Tylenol," an oral solution containing an acetaminophen concentration of 160mg/5mL.

17. Beginning in 2009, several FDA advisory committees recommended the OTC pain medication industry adopt a single, standardized acetaminophen concentration for pediatric oral liquid products because the availability of multiple concentrations caused confusion and errors among both consumers and health care professionals.

### 2011: The LPA market adopts a standard dose of 160mg/5mL

18. In or about May of 2011, Defendants joined with other OTC pain medication makers to agree to only produce LPA products at the standardized 160mg/5mL concentration.

19. Despite their commitment to a standardized LPA concentration, Defendants have continued since at least as early as January 1, 2012 to market, produce, and sell two distinct LPA products: Infants' Tylenol and Children's Tylenol.

20. Defendants capitalized on consumer confusion surrounding market changes, concentrations, and dosage size by marketing the same product at different price points.

### 2012: Defendants begin selling the same medicine as two different LPA products at two very different prices.

21. As of January 1, 2012, every LPA product Defendants manufactured, produced, marketed, and sold contained the standardized concentration of 160mg/5mL.

22. Despite adopting and utilizing a standard LPA concentration, Defendants continued to manufacture, produce, market, and sell two different products aimed, targeted, and represented as intended for two different patient classes: infants and children.

5

23. "Infants' Tylenol Oral Suspension" (herein referred to as Infants' Tylenol) contains a 160mg/5mL concentration of acetaminophen.

24. "Children's Tylenol Oral Suspension" (herein referred to as Children's Tylenol) contains a 160mg/5mL concentration of acetaminophen.

25. Infants' Tylenol and Children's Tylenol contain the exact same medicine.

26. The only difference between the Infants' Tylenol product and the Children's Tylenol product is that the Infants' product comes in a smaller volume and features a dropper delivery device (rather than a cup).

27. The delivery device in both products provides for delivery of the same sized dose: 5 mL.

28. The delivery devices cost Defendants the same or substantially the same to produce.

29. The delivery devices in both Infants' Tylenol and Children's Tylenol provide the same measurement markings.

30. Defendants sell, and induce third parties to sell, Infants' Tylenol at costs over 200% higher per oz. than Children's Tylenol, and, in some instances, almost 400% more expensive.

31. Defendants have no reasonable justification for charging a price premium on Infants' Tylenol.

32. Infants' Tylenol contains no benefit over the cheaper Children's Tylenol

**Defendants unfairly label, market, and represent "Infants' Tylenol" as a product specifically designed and/or intended for infants.**

33. Through its marketing and labelling, Defendants mislead and deceive parents of infants, a particularly vulnerable and insecure consumer class, into believing they need to purchase the more expensive Infants' Tylenol for their young children.

34. Defendants have made millions in dollars in profit by upselling Infants' Tylenol, a product that contains no pharmacological advantage to infants over Children's Tylenol.

6

35. Through their labelling and marketing, Defendants represent that Infants' Tylenol is the appropriate and best medication for a child two years old or younger and that Children's Tylenol is the appropriate and best medication for an older child.

 

36. Defendants explicitly label the pricier product as "Infants' Tylenol" and sell it in quantities of 1 oz. or 2 oz. at an approximate retail cost of $5.74-$8.59/oz.

37. Defendants explicitly label the cheaper product as "Children's Tylenol" and sell it in quantities of 4 oz. at an approximate retail cost of $2.19/oz.

38. Other than explicitly labelling the products as one designed for infants and one designed for children, the packaging of Infants' Tylenol prominently features a baby, while the Children's Tylenol packaging prominently features a much older child.

39. The packaging of Children's Tylenol also states conspicuously that it is for "Ages 2-11 years," while the Infants' Tylenol makes no corresponding claim, which leads a reasonable consumer to believe that Infants' Tylenol is intended specifically for babies.

40. On the Infants' Tylenol product website, which is linked directly from the product itself via a QR code on the packaging, Defendants' proclaim **"Infants' TYLENOL works differently than other pain medicine and fever medicine."** (emphasis added).

41. Infants' Tylenol does not work any differently than Children's Tylenol or any other LPA on the market.

42. On the Tylenol website, Defendants provide information for new parents on what to do when they are "Welcoming [their] Baby's First Tooth." One such recommendation made by Defendants is to give the baby Infants' Tylenol.

43. Also on the Tylenol website, Defendants feature a section for "Baby's First Cold." Defendants' state: "Try cool compresses and Infants' TYLENOL to help keep your baby comfortable and keep a fever down."

44. Based on the representations Defendants make in their labelling and marketing of their Infants' Tylenol, a reasonable consumer would believe that Infants' Tylenol is the appropriate and best medication for a child two years old or younger and that Children's Tylenol is the appropriate and best medication for an older child.

45. Defendants' labelling and marketing Infants' Tylenol as the appropriate and best medication for a child two years old or younger and that Children's Tylenol is the appropriate and best medication for an older child is false, misleading, and deceptive.

46. Despite labelling and marketing a product for infants, Defendants do not recommend or promote any dosage size of LPA for children under two years of age without the child's parents first consulting a pediatrician.

**Plaintiff Purchases Infants' Tylenol**

47. In July 2018, Plaintiff purchased Infants' Tylenol for her infant child.

48. Plaintiff saw and reasonably relied on Defendants' labelling, marketing, and representations about Infants' Tylenol, including that Infants' Tylenol is the appropriate and best medication for a child two years old or younger.

49. Plaintiff purchased Infants' Tylenol based on Defendants' labelling, marketing, and representations about the product.

50. Plaintiff paid a price premium of almost 400% more than Children's Tylenol for the Infants' Tylenol she purchased.

51. Had she known at the time she purchased the Infants' Tylenol that there were cheaper alternatives from Defendants that contained identical medication, Plaintiff would have purchased the cheaper alternatives.

52. Plaintiff was misled and deceived by Defendants' false representations about the nature, quality, design, and efficacy of Infants' Tylenol.

### IV. JURISDICTION AND VENUE

53. Defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., and Johnson & Johnson Consumer, Inc. are organized under the laws of the state of New Jersey with their principal place of business in New Jersey. These Defendants are citizens of the State of New Jersey under 28 U.S.C. § 1332(c)(1).

54. Defendants McNeil-PPC, Inc. and McNeil Consumer Healthcare are organized under the laws of the state of New Jersey with their principal place of business in Pennsylvania. These Defendants are citizens of the State of New Jersey and Pennsylvania under 28 U.S.C. § 1332(c)(1).

55. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the action involves citizens of different states and the amount in controversy exceeds $75,000.

56. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists.

57. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District, purchased the product in this District, and Defendants have marketed, advertised, and sold the product at issue within this District.

## V. CLASS ALLEGATIONS

58. Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclass (collectively, the "Classes"):

   a. **The Nationwide Class**: All persons in the United States who purchased Infants' Tylenol in the six years preceding the date that notice is provided to the Class.

   b. **The Ohio Subclass:** All persons in the state of Ohio who purchased Infants' Tylenol in the six years preceding the date that notice is provided to the Class.

   c. The class and subclass exclude all defendants; the officers and directors of defendants; as well as any entity in which any of the defendants have or had since

the commencement of the class period a controlling interest, together with legal representatives, successors in interest, heirs and assigns of excluded parties.

59. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claim on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim

60. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

61. **Numerosity** under Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Although precise numbers are not known, the unlawful practices outlined in this Complaint are believed to impact hundreds of thousands of consumers. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

62. **Commonality and Predominance** under Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a. Whether Defendants misled or misrepresented their Infants' Tylenol product to consumers;

    b. Whether Defendants are making claims that Infants' Tylenol has certain performance characteristics, uses, or benefits, that it does not;

    c. Whether Defendants labelled Infants' Tylenol deceptively;

    d. Whether Defendants made false representations about Infants' Tylenol;

    e. Whether a reasonable consumer would have relied on Defendants' representations concerning Infants' Tylenol;

    f. Whether consumers were damaged by paying a price premium to purchase Infants' Tylenol;

    g. Whether Defendants were unjustly enriched by their unfair labelling, marketing, and sales practices;

    h. Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

    i. Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

63. **Typicality** under Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' wrongful conduct as described herein.

64. **Adequacy** under Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Classes she seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and her counsel.

65. **Declaratory and Injunctive Relief** under Federal Rule of Civil Procedure 23(b)(2): Defendants have acted on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

66. **Superiority** under Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for Nationwide and Ohio Subclass members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CAUSES OF ACTION

**COUNT 1** – <u>Violation of Consumer Sales Practices Acts</u>

67. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

68. Plaintiff bring this Count individually, on behalf of the Nationwide Class, and on behalf of the Ohio Subclass.

69. Defendants must follow state consumer fraud acts, including Ohio's Consumer Sales Practices Act, R.C. § 1345 *et seq* (the "CSPA"), and substantially similar acts in other states, not to engage in the acts and omissions alleged herein.

70. Defendants violated and continue to violate these acts, including the CSPA, by engaging in the following practices which were intended to result in, and did result in, the sale of Infants' Tylenol:

13

    a. By "commit[ing] an unfair or deceptive act or practice in connection with a consumer transaction;" (1345.02(A))

    b. By representing: (B)

        1. That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have; (1)

        2. That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not; (2)

        3. That the subject of a consumer transaction is available to the consumer for a reason that does not exist; (4)

        4. That the subject of a consumer transaction has been supplied in accordance with a previous representation, (5)

71. Pursuant to the Ohio Administrative Code § 109:4-3-10(A)(Substantiation of Claims in Advertising), "It shall be a deceptive act or practice in connection with a consumer transaction for a supplier to:"

> Make any representations, claims, or assertions of fact, whether orally or in writing, which would cause a reasonable consumer to believe such statements are true, unless, at the time such representations, claims, or assertions are made, the supplier possesses or relies upon a reasonable basis in fact such as factual, objective, quantifiable, clinical or scientific data or other competent and reliable evidence which substantiates such representations, claims, or assertions of fact.

72. In conjunction with all violations alleged herein, Defendants violated OAC § 109:4-3-10 because it cannot and has not substantiated the labelling, marketing, and advertising representations and claims made in connection with Infants' Tylenol.

73. Defendants further violated the CSPA by acting unconscionably including, but not limited to:

    a. Knowingly tak[ing] advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement; (1345.03(B)(1)

    b. Entering into consumer transactions to sell Infants' Tylenol when Defendants knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers; (2)

    c. Entering into consumer transactions to sell Infants' Tylenol when Defendants knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction; (3)

    d. Entering into consumer transactions to sell Infants' Tylenol when Defendants required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier; (5)

    e. Knowingly ma[king] a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment; (6).

74. Defendants violated the CSPA, the similar state laws and the Ohio Administrative Code by representing through its labelling, marketing, and advertising Infants' Tylenol as described above when it knew, or should have known, that the representations, labelling, marketing, and advertising was unsubstantiated, false, deceptive, and misleading.

75. Pursuant to the CSPA and the similar state laws, Plaintiff, the Nationwide Class, and the Ohio Subclass are entitled to rescind the consumer transactions, recover damages or other appropriate relief under Fed. R. Civ. P. 23.

76. Defendants had notice that making false or misleading representations about their LPA products would violate state consumer protection laws, including the CSPA.

77. Defendants had notice that their misleading and deceptive acts as described herein would violate consumer protection laws, including the CSPA, and that they would be required to make full restitution and reimburse the purchase price of Infants' Tylenol to Ohio consumers that purchased the product.

78. All of Defendants' violations, as alleged herein, were done knowingly, with knowledge of their wrongful, misleading, and deceptive nature.

79. Pursuant to R.C. § 1345.09(D), Plaintiff, the Nationwide Class, and Ohio Subclass seek an Order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

80. Pursuant to R.C. § 1345.09(D), this Complaint will be served upon the Ohio Attorney General.

81. Plaintiff, the Nationwide Class, and Ohio Subclass reserve the right to allege further violations of Ohio's CSPA as Defendants' conduct is ongoing.

<b>COUNT 2</b> – <u>Violation of Deceptive Trade Practices Acts</u>

82. Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here

83. Plaintiff bring this Count individually, on behalf of the Nationwide Class, and on behalf of the Ohio Subclass.

84. Defendants must follow state deceptive trade practices acts, including Ohio's Deceptive Trade Practices Act, not to engage in unfair, false, misleading or deceptive acts and practices and untrue or misleading advertising.

85. For the reasons discussed above, Defendants have engaged in unfair, deceptive, untrue acts and practices and misleading advertising in violation of state deceptive trade practices acts, including Ohio's Deceptive Trade Practices Act § 4165.02 because, in the course of Defendants' business, Defendants:

    a. Cause[d] likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (A)(2)

    b. Use[d] deceptive representations …in connection with goods or services; (A)(4)

    c. Represent[ed] that goods or services have …characteristics, … uses, benefits, … that they do not have; (A)(7)

    d. Represent[ed] that goods or services are of a particular standard, quality, or grade, … if they are of another; (A)(9)

86. Plaintiff, the Nationwide Class, and Ohio Subclass reserve the right to allege other violations of the law under the deceptive trade practices acts as Defendants' conduct is ongoing.

87. Defendants' conduct has caused and continues to cause substantial injury to Plaintiff, the Nationwide Class, and Ohio Subclass members. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' deceptive conduct.

88. Plaintiff, the Nationwide Class, and Ohio Subclass members seek equitable relief and to enjoin Defendants on the terms that the Court considers reasonable.

**COUNT 6** – Unjust Enrichment

89. Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully restated here

90. Plaintiff bring this Count individually, on behalf of the Nationwide Class, and on behalf of the Ohio Subclass.

91. Plaintiff and members of the Classes conferred a benefit on Defendants by, inter alia, paying an unwarranted price premium for Infants' Tylenol.

92. Defendants have retained this benefit and know of and appreciate this benefit.

93. Defendants were and continue to be unjustly enriched at the expense of Plaintiff and Class members.

94. Defendant should be required to disgorge this unjust enrichment.

## VII.  REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of Classes, respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

i) Certification of the proposed nationwide Class;

ii) Certification of the proposed Ohio Subclass;

iii) Appointment of Plaintiff's counsel as Class Counsel;

iv) An order appointing Plaintiff as lawful and adequate representative of the Nationwide Class and Ohio Subclass;

v) An Order barring Defendants, on its/their own or through agents, from attempting to induce any putative Class member to sign any document which in any way releases any of the claims of any putative Class member;

vi) A declaration that the Defendants are financially responsible for notifying all Class Members about the violations as described herein and their right to participate in Class relief;

vii) An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

viii) Plaintiff's, Class, and Subclass Members compensatory damages in an amount to be determined for all injuries and damages described herein;

ix) Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

x) An award of costs and attorneys' fees; and

xi) Such other or further relief as may be appropriate.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL FOR ALL CLAIMS SO TRIABLE.**

Respectfully submitted,

*/s/ Eric W. Henry*

**ERIC W. HENRY (0086750)**
The Henry Law Firm
529 E. Washington St.
Suite 240
Chagrin Falls, OH 44022
(440) 337-0083 P
(440) 337-0084 F
eric@erichenrylaw.com

Attorney for Plaintiffs